# SUPERIOR COURT.

## SPRING SESSIONS.

## 1875.

BARCROFT & CO. *v.* CHARLES DENNY.

*A verbal acceptance of a written order for the payment of money, and promise to pay it without seeing it produced, will bind the acceptor in preference to a fi. fa. attachment subsequently laid in his hands for the same amount at the suit of an execution creditor.*

ATTACHMENT *fi. fa.* on a judgment in this court at the suit of the plaintiffs against the defendant, and laid in the hands of Nathaniel P. Smithers, Esq., garnishee, to which he made, by consent of counsel, the following special answer in writing: That the attachment was served upon him on the 16th day of April, 1873, and that he was then indebted to Denny, the defendant in it, to the amount of seventy-five dollars, but prior to the service of it, and about one week before it, he believed, George V. Massey, Esq., called on him and informed him that he had an order drawn by Denny in his favor on him for seventy-five dollars, the amount of his indebtedness, and inquired of him if it was right, or in words to that effect; to which he replied that it was right, and then and there distinctly informed him that he would pay the sum to him instead of to Denny, and he held himself from that time as standing in the relation of payor to Massey, instead of Denny, but that the order was not shown to him until after the attachment had been served on him, nor was there any other acceptance of the order by him at any time; and upon it he presented the question to the court to

which of the two contesting parties claiming it he was legally bound to pay it under the facts and circumstances stated.

*Fulton*, for the plaintiffs : There was neither a proper present-ment to nor a sufficient acceptance of the order by Mr. Smithers, according to the facts stated by him ; for not only the order as communicated to him was verbal and by the payee of it, but his acceptance of it was also verbal merely.

In England it is essential to the acceptance of an inland or domestic bill of exchange that it shall be in writing on such bill. *Byles on Bills* 146 ; *Bullard* v. *Randall*, 1 *Gray* 605. We have never had any legislation in this State in regard to the matter, but as it originally existed at common law such a com-mercial instrument was a *chose* in action merely ; there was, however, early legislation in England on this subject whence we have derived our law in relation to it, the first of which seems to have been in the statute of 9 & 10 Wm. 3, c. 17, in reference to inland bills of exchange, as early as 1698, which expressly prescribed and required that the acceptance of such a bill of exchange should be by underwriting the same under the party's hand accepting it, although the recognized custom and practice with regard to foreign bills of exchange was then, and has since continued to be different, but with reference to the other kind, the law in that country has remained substantially the same as it was then made ; and as it was a well-known his-torical fact that all the laws of England were authoritatively adopted here as soon as the dominion of that country was estab-lished over what now constitutes this State, so far as they were applicable to the wants and condition of people of it, it was but reasonable to infer that such was the rule and the law in regard to the matter then recognized and established here.

*Massey, contra :* Did the answer as given and stated by Mr. Smithers when he was informed that I had such an order in writing, though not then about me, from Mr. Denny upon him, amount to a verbal acceptance of it ? If it did, then it was not necessary that it should have been in writing even, and if so, much less that it should have been written or indorsed on the

order itself. 1 *Pars. on Notes and Bills* 285. In *Fisher* v. *Beck-with*, 19 *Vert.* 31, a case very similar to this, a verbal acceptance of an order in terms almost identically the same as the answer in this case was held to be sufficient.

*Wales, J.*, delivered the opinion of the court: Nathaniel B. Smithers being indebted to Charles Denny in the sum of seventy-five dollars, the latter drew an order on him in favor of George V. Massey for that amount. Mr. Massey gave notice to Mr. Smithers that he had possession of the order and of its contents, and was informed by Mr. Smithers that "it was all right," and that he would pay him (Massey) the said sum instead of paying it to Denny ; and from and after that time Mr. Smithers held himself as standing in the relation of debtor to Massey instead of to Denny. The order was not formally presented or shown to Mr. Smithers, and there was no other or different acceptance of it from that here stated. About a week after this transaction, Barcroft and others, judgment creditors of Denny, by a writ of execution with a clause of attachment, summoned Mr. Smithers to answer as the garnishee of Denny.

Upon this state of facts the court is asked to determine whether the holder of the order or the attaching creditors are entitled to the money in the hands of Mr. Smithers.

The case presents the question of the validity of a parol acceptance of a bill of exchange—the only point argued by the counsel.

At common law there was no difference between inland and foreign bills of exchange in relation to the mode of acceptance, but only as to protests, for there was no way to charge the drawer of an inland bill with interest and costs after a protest for non-payment, and the statute of 9 and 10 W. 3 was passed to remedy this. The act of 3 and 4 Anne gave a remedy by protest for non-acceptance. Prior to these statutes, it seems never to have been disputed that a parol acceptance was sufficient to bind the acceptor, and even after their passage, when the question came before Lord Hardwicke in the case of *Lumley & Palmer, Rep. t. Hardwicke* 74, it was decided that an action might be maintained against an acceptor on a parol acceptance, and that the whole provision of the acts of W. 3 and Anne

plainly relates to protests, the first giving a remedy upon protests for *non-payment*, and the second providing for protests for *non-acceptance*. The fifth section of the statute of Anne has express words that no acceptance shall charge any person unless underwritten or indorsed, but the court said that these words were restrained by the words immediately following—that if such be not thus accepted, no drawer shall be liable to pay costs, damages, or interest thereon, so that the first general words are only to be understood to relate to the charging the drawer with interest and costs. There was also a proviso that nothing in the act should discharge any remedy against the drawer, acceptor, or indorser. No change was made in the law or the ruling of the courts until 1 and 2 Geo. 4, when it was enacted that no acceptance of any *inland* bill of exchange should be valid and sufficient unless it was in writing on the bill. But this act did not include *foreign* bills, and it has been decided that although a promise to accept a bill not drawn will not be available as an acceptance, yet a promise to pay or accept an existing foreign bill is of itself an acceptance. *Byles on Bills* 147. And as the law stood in England prior to the statute of Geo. 4, so it now prevails in this State. The only distinction made in our statute between foreign and inland bills is that damages on bills drawn on any person beyond the seas and returned unpaid with legal protest, shall be twenty per cent. in addition to the amount of such bills. *Amended Code* 356.

The English judges lamented that anything short of a writing on the bill should have been considered as an acceptance, but that such was considered to be the law until a comparatively recent period, is established by adjudged cases and by the passage of the Act of 1 and 2 Geo. 4, requiring written acceptances on bills. So general and so long continued had been the usage among merchants of accepting bills by parol, that this law has received a very liberal construction by the courts, and almost *any* writing or mark made by the drawee on the bill signifying that the bill has been "presented," or "seen," has been held to be a valid acceptance without the signature of the acceptor.

The validity of parol acceptances has been sustained by the courts in several of the States of the Union, where the subject is

not controlled by statute, and by the Supreme Court of the United States. By the revised statutes of New York an acceptance is void unless made in writing, but prior to the revision it was held that a parol acceptance was binding. *Leonard* v. *Mason*, 1 *Wend.* 522. In *Fisher* v. *Beckwith*, 19 *Vert.* 31, a case parallel with the one before us, the court said : " There is no rule requiring that the bill should be actually shown to the drawee in order to a valid and binding acceptance ; it is enough if, when applied to for acceptance, he is enabled, by seeing the bill or otherwise, to give an intelligent answer. And in *Coolidge* v. *Payson*, 2 *Wheaton* 66, a verbal promise to accept a bill of exchange not yet drawn was adjudged binding. Judge Story regretted that the doctrine of such virtual acceptances ever was established, but he did not deny that such was the law, only contending that the doctrine was alone applicable to such bills as were payable on demand or at a fixed time after date. In England the validity of parol acceptances of foreign bills is still recognized, and in *Billing* v. *Devaux*, 11 *L. J.* 38 *C. P.*, it was held that any conduct of the drawee by which he intended the holder should understand that he meant to accept or pay will amount to an acceptance.

When we come to look for the principle on which these cases have been decided, there is no difficulty in understanding it. In the absence of statutes regulating these matters, the custom of merchants and bankers shapes the law. The acceptance of a draft or bill is a fact to be proved, like any other fact, to the satisfaction of the jury. The character and mode of proof are settled by the law merchant and the practice of the courts. The legislature can intervene, when it chooses, to require every acceptance to be in writing and signed by the acceptor, and even attested with the same care and formality as the execution of a will or the assignment of a bond, but in this State it has so far abstained from interfering with the common law and commercial usages in this respect.

An acceptance is no more than an admission that the acceptor has funds or property of the drawer, and a promise to pay the money to the holder of the bill. It is not a promise to pay the debt of another, and is not, therefore, within the statute of

frauds. The policy of allowing actions to be maintained on parol acceptances is fairly subject to discussion and criticism, as opening the door to fraud, or at least to mistake and misunderstanding, arising from the lapse of time and the uncertainty of spoken words and of memory; but we cannot declare the law to be different from what we find it to be both in England and in our own courts.

There is another view which may be taken of this case that was not alluded to in the argument. Denny's order was for the whole amount due to him from Mr. Smithers. When a bill has been accepted, it is considered as an assignment to the payee of a debt, or part of a debt, due from the drawee to the drawer, and binds the funds for the use of the payee. But where an order is drawn for the whole of a particular fund, it amounts to an equitable assignment of that fund, and *after notice* to the drawee it binds the fund in his hands. If an order is drawn for a part only of a general or particular fund, it does not amount to an equitable assignment of that part, or give a lien as against the drawee, unless he consent to an appropriation by an acceptance of the draft. The reason is that a creditor shall not be permitted to split up a single cause of action into many actions without the assent of his debtor. He has a right to stand upon the singleness of his original contract, and to decline any legal or equitable assignments by which it may be broken into fragments. *Mandeville* v. *Welch,* 5 *Wheaton* 277.

Judgment for the defendant.