IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LARRY MARTIN, | § | |
| | § | No. 386, 2022 |
| | § | |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | |
| | § | Court Below:  Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| | § | |
| STATE OF DELAWARE, | § | I.D. No. 2111004614(N) |
| | § | |
| | § | |
| Appellee. | § | |

Submitted:  September 13, 2023
Decided:   November 7, 2023

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LeGROW**, and **GRIFFITHS**, Justices, constituting the Court *en banc*.

Upon appeal from the Superior Court.  **AFFIRMED**.

Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, Delaware.

Matthew C. Bloom, Esquire, Delaware Department of Justice, Wilmington, Delaware.

**VALIHURA**, Justice:

This appeal arises out of the Superior Court's sentencing of defendant-below, appellant Larry D. Martin ("Martin"). On May 26, 2022, Martin pled guilty to one count of Stalking and two counts of Non-Compliance with Bond ("NCB"). The trial court entered its first sentencing order on August 12, 2022, followed by three corrected sentencing orders, entered on September 8, September 21, and October 17, 2022, respectively. In its first sentencing order, the trial court sentenced Martin to five years of incarceration at supervision Level V, suspended after one year, for the Stalking conviction. He was also ordered to pay a fine of $100 for each of his two NCB convictions. Both fines were suspended.

It is undisputed that the trial court's first sentencing order was illegal because it imposed a sentence that exceeded the maximum lawful sentence for Stalking, which is three years at Level V supervision. In an email dated August 29, 2022, Martin's trial counsel ("Trial Counsel") informed the trial court of the illegality of the sentence, and that the State recommended that the trial court fix its error by redistributing Martin's five-year prison sentence across the Stalking conviction and the two NCB convictions. The trial court did just that. In a corrected sentencing order, issued on September 8, 2022, the trial court reduced Martin's sentence for Stalking to three years of incarceration at Level V supervision, to bring it in line with the lawful maximum sentence. The trial court then added one year of incarceration at Level V supervision, suspended for probation, to the suspended fines for each NCB conviction. It is undisputed that if this had been the original sentence, Martin's sentence would have been lawful.

Martin appeals the trial court's sentencing order insofar as it modifies his sentence for the NCB convictions. He argues that by increasing his sentence for the NCB convictions, the trial court effectively resentenced him for those convictions despite the fact that he had already served them. This is because those sentences consisted solely of fines that were suspended when imposed and as such, were completed as of the date of the sentence. According to Martin, he completed his sentence for both NCB convictions on August 12, 2022, and any subsequent resentencing was barred by principles of double jeopardy.

For the reasons set forth below, we **AFFIRM** the sentence imposed by the trial court in its September 8, 2022 sentencing order, as modified by the September 21, 2022 and October 17, 2022 sentencing orders.

## I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A. The Plea

On May 23, 2022, a Superior Court grand jury returned a fourteen-count indictment against Martin.[1] Three days later, Martin entered into a plea agreement with the State, wherein he pled guilty to one count of Stalking and two counts of NCB. The State agreed to enter a *nolle prosequi* on the remaining charges.[2] Stalking is a class F felony punishable by up to three years in prison, with a six-month minimum mandatory period of

---

[1] App. to Opening Br. at A3–A9 (Indictment). The indictment lists one count of felony Stalking, one count of Misdemeanor Criminal Trespass First Degree, one count of Misdemeanor Criminal Mischief, one count of Misdemeanor Theft (Theft under $1,500), two counts of Misdemeanor Harassment, and eight counts of Misdemeanor NCB.

[2] *Id.* at A12 (Guilty Plea Transcript, May 26, 2022); A27 (Plea Agreement, May 26, 2022).

incarceration. NCB is a misdemeanor offense punishable by up to one year in prison and up to a $500 fine.[3] In the plea agreement, the State agreed to cap the unsuspended Level V time at eighteen months, and the State and Martin agreed to the following conditions: that Martin have no contact with the victim, that Martin undergo a mental health evaluation and follow recommended treatment, and that he complete a Domestic Violence Coordinating Council certified domestic violence course.[4]

As required, the trial court held a colloquy to determine whether Martin freely and knowingly accepted the plea. With respect to the Stalking charge, the trial judge asked whether Martin understood that "[s]talking has a range of penalties of six months to three years in prison. That six months is the minimum sentence that the [c]ourt has to impose, the guidelines call for up to seven months at Level V, and there's a possibility of a fine at the [c]ourt's discretion."[5] With respect to the NCB charges, the trial judge ensured Martin understood that "[e]ach of the [NCB] charges carries punishment up to a year in prison. There is no minimum mandatory period of incarceration for them, and the guidelines call for a fine and costs of prosecution and there's a possibility of a fine of up to $500 in each."[6] The trial court told Martin that the guidelines are simply recommendations to the trial court and that "what that means in total is *the maximum punishment you're facing is five years with a minimum of six months*, and a fine of up to a thousand dollars, plus anything at the

---

[3] 11 *Del. C.* §§ 1312(c), 2113(c), 4205(b)(6).

[4] App. to Opening Br. at A12 (Plea Transcript ¶ 13–14, 18–23, at 3).

[5] *Id.* at A16–17 (Plea Transcript ¶ 22–23, at 7; ¶ 1–4, at 8).

[6] *Id.* at A17 (Plea Transcript ¶ 4–10, at 8).

[c]ourt's discretion on the stalking charge."[7]  After completing its colloquy with Martin, the trial court found Martin's plea to be knowingly, voluntarily, and intelligently offered. Accordingly, it accepted his plea and ordered a pre-sentence investigation.[8]

### B.     The Sentencing Hearing

Martin's sentencing hearing was held on August 12, 2022.  The State opened by reading an impact statement written by the victim.  In her statement, the victim urged  that Martin be incarcerated to ensure her safety as well as the safety of their daughter.[9]  The State then gave the court a brief overview of the events leading up to Martin's arrest,[10] and noted the following aggravating factors:  custody status at the time of the offense, repetitive criminal conduct, prior violent criminal conduct, lack of amenability, and lack of remorse.[11]  Based on these factors, the State requested that Martin serve "a total of five years of Level V, suspended after 18 months Level V, six months of which are minimum mandatory, suspended for six months at Level IV probation, followed by one year at Level III probation with GPS monitoring."[12]

---

[7] *Id.* at A17 (Plea Transcript ¶ 16–21, at 8) (emphasis added).

[8] *Id.* at A24 (Plea Transcript ¶ 2–8, at 15).

[9] *Id.* at A30–A34 (Sentencing Hearing Transcript at 3–7).  The victim expressed her fear that Martin would harm her and her daughter once he is released from prison.

[10] These include Martin breaking into the victim's home, keying obscenities into the victim's car, verbally abusing the victim in the hospital when the victim was giving birth to their daughter, and, on multiple occasions, violating no-contact orders in place with respect to the victim.  *Id.* at A34–37 (Sentencing Hearing Transcript at 7–10).

[11] *Id.* at A38–A39 (Sentencing Hearing Transcript at 11–12).

[12] *Id.* at A39–A40 (Sentencing Hearing Transcript at ¶ 23, at 12; ¶ 1–7, at 13).

Martin asked the court to limit his sentence to time served, which at the time was approximately nine months, followed by Level III probation with GPS monitoring.[13] He presented mitigating factors, such as his struggle with mental health. A letter written by Martin's mother was read as well.

After hearing from the State and Martin, the trial judge considered the following aggravating factors: Martin's custody status at the time of the offense, Martin's repetitive criminal conduct, Martin's prior violent criminal conduct, and Martin's lack of amenability. The trial court also considered Martin's need for mental health treatment as a mitigating factor. Ultimately, the trial court issued the following sentence, in relevant part:

> With regard to the stalking, effective November 13, 2021, five years at Level V, six months are mandatory, suspended after one year for six months at Level III GPS monitoring, followed by one year at Level III . . . . With regard to [NCB count one], $100 fine; and [NCB count two], $100 fine.[14]

### C. The Sentencing Orders

The trial court entered its first sentencing order on August 12, 2022 (the "First Sentencing Order"), memorializing the sentence it orally announced during Martin's sentencing hearing. Specifically, it issued the following sentence:

- Stalking: 5 years of incarceration at supervision Level V, suspended after 1 year for 6 months probation Level 3 GPS, followed by 18 months at supervision Level 3;

- NCB: a fine of $100.00, all of which is suspended; and

---

[13] *Id.* at A41 (Sentencing Hearing Transcript at ¶ 17–23, at 14).

[14] *Id.* at A50–A51 (Sentencing Hearing Transcript at ¶ 19–23, at 23, ¶ 1–6, at 24).

- NCB: a fine of $100.00, all of which is suspended.[15]

On August 29, 2022, Trial Counsel sent a letter to the trial judge, copying the State, explaining that the First Sentencing Order was illegal because "Stalking class F felony has a maximum of 3 years."[16] Trial Counsel then advised the court of the State's position as it had been communicated to her stating that:

> "In the State's sentencing recommend[ation] the State did request a total of 5 years back time. However, that back time should have been broken up to 3 years on the Stalking charge and 1 year on each of the misdemeanor Non Compliance with Bond charges. *It appears it was the Court's intent to give the 5 years back time, it just needs to be distributed appropriately*."[17]

Although Trial Counsel was restating in the email what the State had advised her, Trial Counsel seemingly acquiesced in the State's recommendation as she did not object to the State's proposed solution or propose an alternative. Instead, Trial Counsel simply stated she was "happy to file a Motion if that would be the [c]ourt's preference."[18]

Approximately a week later, on September 8, 2022, the trial court issued a corrected sentencing order (the "Second Sentencing Order"). In the Second Sentencing Order, the trial court corrected the sentence as requested by the State through Trial Counsel. That is,

---

[15] Opening Br., Exhibit A (First Sentencing Order).

[16] *Id.* at A53 (Email re: State v. Larry Martin, Case 2111004614, Aug. 29, 2022); *see also Wilson v. State*, 900 A.2d 102, 2006 WL 1291369, at *3 (Del. May 9, 2006) (TABLE) ("A sentence is illegal when the sentence imposed exceeds the statutorily authorized limits, violates the Double Jeopardy Clause, is ambiguous with respect to the time and manner in which it is to be served, is internally contradictory, omits a term required to be imposed by statute, is uncertain as to the substance of the sentence, or is a sentence which the judgment of conviction did not authorize.").

[17] *Id.* at A53–A54 (Email re: State v. Larry Martin, Case 2111004614, August 29, 2022) (emphasis added).

[18] *Id.*

the Second Sentencing Order orders Martin to serve three years incarceration for Stalking at Level 5, suspended after one year at Level 5 for six months at Level 3. That order also sentenced Martin to one year of incarceration for each of the NCB charges, suspended for one year at supervision Level 1. Probation on all three was to be "concurrent to any probation now serving."[19]

The trial court issued another corrected sentencing order on September 21, 2022 (the "Third Sentencing Order"), this time "to remove language in the sentence for each charge that states '[p]robation is concurrent to any probation now serving.'"[20] It adds that "[p]revious terms and conditions still apply."[21]

The trial court issued a fourth, and final, corrected sentencing order on October 17, 2022 (the "Fourth Sentencing Order").[22] In the Fourth Sentencing Order, the trial court clarified that the order was being corrected "to show that the rema[ining] charges on this case are being *Nolle Prosequied*."[23]

Martin filed notice of appeal on October 18, 2022. The parties dispute whether this appeal was timely, but both sides have briefed the substantive issue on appeal.

---

[19] Opening Br., Exhibit B (Second Sentencing Order).

[20] Opening Br., Exhibit C (Third Sentencing Order at 3).

[21] *Id.*

[22] The Fourth Sentencing Order was docketed on October 24, 2022, after this appeal was filed.

[23] Opening Br., Exhibit D (Fourth Sentencing Order at 3).

8

*D.  Contentions on Appeal*

*1.  Martin's Contentions*

Martin sets forth one argument on appeal, namely, that the trial court violated principles of double jeopardy when it resentenced him for his two NCB convictions after he had already completed each sentence.  Specifically, he contends that as of September 8, 2022, the date of the Second Sentencing Order, he had already served his sentences for both NCB convictions.  He cites our decision in *Longford-Myers v. State*[24] — a case which the State argues is irrelevant given recent amendments to Superior Court Rule of Criminal Procedure 35.[25]  According to Martin, when a court orders a defendant to pay a fine then

---

[24] 213 A.3d 556, 560 (Del. 2019).  In *Longford-Myers*, the Superior Court corrected an illegal sentence, and at the same time, modified the sentence for a related conviction, despite that aspect of the sentence being legal.  The State argued that the Court could do this pursuant to Rule 35(a), which allows the court to correct an illegal sentence at any time.  This Court held that the Superior Court had no power to modify the legal aspect of the sentence under the plain language of Rule 35(a) because Rule 35(a) only empowers the Superior Court to correct/modify an *illegal* sentence.  The fact that the illegal sentence and legal sentence were part of the same sentencing package was immaterial.  Specifically, this Court said:

> Because it is undisputed that the sentence imposed for the drug dealing charge at resentencing after Longford-Myers' violation of probation was legal and because the State has not alleged any other source of power for the Superior Court's orders from June and August 2018 other than Rule 35(a), we find that the Superior Court abused its discretion by modifying that sentence.  It is therefore unnecessary for us to decide whether 11 *Del. C.* § 1447A(d) prohibits suspended sentences.

*Id.* at 560.  With respect to *White* and double jeopardy, we noted in *Longford-Myers* that:

> [T]his case concerns what powers the Superior Court may exercise pursuant to Rule 35; Longford-Myers did not raise a double jeopardy claim. *Cf. White v. State*, 576 A.2d 1322, 1324–29 (Del. 1990) (after appellate review vacates convictions on one charge in a case, the Superior Court may increase sentence for remaining charges without running afoul of the Double Jeopardy Clause); *Dabney v. State*, 12 A.3d 1101, 1102 (Del. 2009).

*Id.* at 559 n.15.

[25] Following *Longford-Myers*, Rule 35 was amended to add a new subsection (d) which specifies that upon modification of one portion of a sentence, the court may modify other portions of that

immediately suspends it without sentencing the defendant to any period of incarceration or probation for that conviction, as the trial court did here, then the sentence is completed as of sentencing because "there is no set of circumstances, therefore, under which the defendant can be required to pay any fine for his conviction."[26] According to Martin, he served his sentence for each of the NCB convictions as of the date of the First Sentencing Order, August 12, 2022, giving rise to his legitimate expectation of finality in the completion of those sentences. Thus, he argues that he could not be resentenced later, on September 8, 2022.

Martin dedicates the remainder of his briefing on appeal to defending procedural challenges to his claim. *First*, as to Trial Counsel's letter to the trial court requesting the very relief that the trial court issued in its Second Sentencing Order, Martin argues that a defendant cannot waive his right to appeal an illegal sentence.[27] Moreover, Martin argues that even if we view Trial Counsel's email as a waiver by Martin, we should follow the federal courts by applying a "miscarriage of justice" exception to allow Martin a right to appeal his illegal sentence because it is constitutionally invalid.[28]

---

same sentence, provided that the aggregate sentence after modification is no greater than the aggregate sentence entered under the original sentencing order. The amendment became effective on July 1, 2020. This change was intended to provide the Superior Court with appropriate discretion to ensure that the overall modified sentence conforms with the intent of the court's original sentencing plan.

[26] Opening Br. at 9 (citing *Kelsch v. State*, 2016 WL 4059233, at *1 (Del. Super. July 28, 2016) and *Harvey v. State*, 692 A.2d 412, 1996 WL 585912, at *1 (Del. Oct. 7, 1996) (TABLE)).

[27] *Id.* at 10 (citing *United States v. Williams*, 597 F. App'-x 99, 100 n.3 (3d Cir. 2015) (citing cases)).

[28] *Id.* at 11 (citing *United States v. Andis*, 333 F.3d 886, 891–92 (8th Cir. 2003) (en banc)).

*Second*, in response to the State's argument that Martin's appeal should be dismissed for lack of jurisdiction because it is untimely, Martin argues that under the plain language of Delaware Supreme Court Rule 6, the time for filing a direct appeal runs from the date of the Fourth Sentencing Order, October 17, 2022, not the date of the allegedly erroneous sentencing order, September 8, 2022.[29] Martin argues further that this Court has, on multiple occasions, remanded cases for the trial court to reimpose the original sentence in order to avoid a jurisdictional default.[30] And because the Third and Fourth Sentencing Orders were both issued to clarify portions of the sentence, we should treat each as "reimpositions" such that they extended the time to file a notice of appeal.

### 2. *The State's Response*

The State contends, as a threshold matter, that this Court does not have jurisdiction to hear Martin's appeal because it was untimely. Because Martin filed notice of appeal on October 18, 2022, more than 30 days after September 8, the date of the illegal Second Sentencing Order, Martin failed to timely file under Delaware Supreme Court Rule 6.[31] It argues that the date of the Third Sentencing Order, September 21, is irrelevant to the calculation of timeliness because the Third Sentencing Order did not respond to Martin's email request for a sentence correction or touch on the issue Martin raises on appeal. The

---

[29] Delaware Supreme Court Rule 6 states that a notice of appeal shall be filed "[w]ithin 30 days after a sentence is imposed in a direct appeal of a criminal conviction." Del. Supr. Ct. R. 6.

[30] *Cf. Binkley v. State*, 271 A.3d 1142, 2022 WL 288153, at *1 (Del. Jan. 31, 2022) (TABLE) (remanding case to Superior Court for reimposition of his sentence in the interest of justice so that appeal would not be dismissed as untimely).

[31] Answering Br. at 8–9 (citing Del. Supr. Ct. R. 6(a)(iii)–(iv)).

11

State contends that rather than clarifying that "probationary portion of the sentences for the convictions of NCB are to follow that for the Stalking"[32] by its plain language, the Third Sentencing Order merely confirmed that probation would run concurrently with the probation Martin was then serving. The State maintains that at most, the correction in the Third Sentencing Order is unclear as to whether it has any effect on how the sentences relate to each other.

In the alternative, the State argues that even if this Court has jurisdiction to hear Martin's appeal, the Double Jeopardy Clause did not bar the trial court from correcting Martin's sentence by redistributing the term of imprisonment. In the State's view, regardless of whether Martin technically completed his sentences with respect to the NCB convictions, Martin had not yet developed a legitimate expectation of finality in them such that double jeopardy principles are implicated.[33]

Next, the State emphasizes that Trial Counsel requested the exact remedy that the trial court adopted and ordered – redistributing the prison term across the three convictions – and that, critically, this was done within the timeframe for the State to appeal the trial court's sentence. The fact that the State could have appealed the sentence pursuant to § 9902(f)[34] when the Superior Court redistributed his suspended prison time means that

---

[32] Opening Br. at 6.

[33] Answering Br. at 12 (quoting *United States v. DiFrancesco*, 449 U.S. 117, 133 (1980)).

[34] 10 *Del. C.* § 9902(f) provides that "[t]he State shall have an absolute right to appeal any sentence on the grounds that it is unauthorized by, or contrary to, any statute or court rule, in which case the decision or result of the State's appeal shall affect the rights of the accused." Such an appeal "shall be filed with the appellate court within 30 days from entry of the order appealed from[.]" 10 *Del.*

Martin could not have had a legitimate expectation of finality. In other words, Martin should have known that his sentence was subject to judicial review within that 30-day period, particularly when Trial Counsel requested a form of judicial review of the sentence within that period.[35]

The fact that the State would only have been able to appeal the illegal part of Martin's sentence – the sentence for Stalking – and not the sentences for the NCB convictions, is of no moment, in the State's view. This is because, the State contends, each of Martin's three sentences were related or "interdependent" such that they were part of the same sentencing package. Consequently, even if the State had appealed the illegal stalking sentence alone, all of Martin's sentences remained subject to review as part of the same sentencing package.

At bottom, the State urges this Court to reject Martin's bright-line rule that defendants have a legitimate expectation of finality once they have completed a sentence, regardless of other factors or circumstances. Instead, the State urges us to adopt the approach of the federal circuit courts of appeal, which "are nearly uniform in their conclusion that a defendant has no legitimate expectation of finality for double-jeopardy purposes even where she served the entirety of a constituent sentence in a sentencing package."[36]

---

*C.* § 9904. Accordingly, the State was able to appeal the First Sentencing Order until September 12, 2022 – four days after the Second Sentencing Order.

[35] *See* Answering Br. at 15 (citing *Taylor v. State*, 599 A.2d 414, 1991 WL 165552 (Del. Aug. 12, 1991) (TABLE)).

[36] Answering Br. at 16 (quoting *United States v. Brown*, 26 F.4th 48, 61 (1st Cir. 2022)). The State further emphasizes that other state courts, such as New York and Wisconsin, reject a "bright-line"

13

Ultimately, in the State's view, a trial court's mistake in allocating a sentence among convictions does not warrant the result of a windfall to a criminal defendant. This is particularly true when the criminal defendant acquiesced in the correction of the mistake within the period for an appeal by proposing the very correction to the sentencing package that the defendant then challenges on appeal.

## II. SCOPE AND STANDARD OF REVIEW

"This Court's appellate jurisdiction to review a criminal sentence is limited to where a defendant has alleged a basis for: 'unconstitutionality; factual predicates which are either false, impermissible, or lack minimum indicia of reliability; judicial vindictiveness, bias, or sentencing with a 'closed mind;' and any other illegality.'"[37] Martin alleges that the Superior Court's modification of the sentences for his NCB convictions contravenes double jeopardy principles, and that the modification violated his rights under the United States Constitution.[38] This Court reviews claims of unconstitutionality *de novo*.[39]

---

rule like the one advocated by Martin. *See* Answering Br. at 16–17. Instead of finding a legitimate expectation of finality once a defendant completes a sentence, the New York Court of Appeals, in *People v. Williams*, 925 N.E.2d 878, 891 (N.Y. 2010), observed that New York generally requires both the completion of the sentence and the expiration of the appeal period. In *State v. Robinson*, 847 N.W.2d 352, 364 (Wis. 2014), the Supreme Court of Wisconsin observed that Wisconsin weighs factors such as passage of time between the original sentence and the resentencing, the completion of the sentence, the pendency of an appeal, and the defendant's misconduct in obtaining the sentence. *See id.* (observing that "a bright line rule is simply unworkable[,]" and that "[e]valuating the extent and legitimacy of a defendant's expectation of finality is a multi-factor inquiry that rests largely on the facts of each individual case.").

[37] *Wynn v. State*, 23 A.3d 145, 148 (Del. 2011) (citing *Siple v. State*, 701 A.2d 79, 83 (Del. 1997)).

[38] *See* U.S. Const. amend. V.

[39] *Williamson v. State*, 707 A.2d 350, 354 (Del. 1998) (citing *Stigars v. State*, 674 A.2d 477, 481 (Del. 1996)).

*III.    ANALYSIS*

The State has raised a threshold procedural issue, namely, whether Martin's appeal is timely. Additionally, Martin has argued that he did not waive his double jeopardy claim when Trial Counsel emailed the trial judge regarding the State's request to correct the illegal sentence. As explained below, we conclude that Martin's claim is timely, and that because the State has not argued waiver, that issue is not before this Court. Accordingly, we address Martin's substantive Double Jeopardy claim. For the reasons set forth below, we hold that the trial court's Second Sentencing Order does not contravene the Double Jeopardy Clause.

A. *This Court Has Jurisdiction to Hear Martin's Claim*

Under this Court's rules governing criminal appeals, a notice of direct appeal of a criminal conviction must be filed "[w]ithin 30 days after a sentence is imposed[.]"[40] Martin filed notice of this appeal 40 days after the date of the Second Sentencing Order, the illegal order, but within 30 days of the Third Sentencing Order, which also contains the alleged constitutional defect. Thus, we consider, for purposes of Rule 6, the question of when the illegal sentence was "imposed." The State argues that unless we decide that the sentence was "imposed," and the time for a direct appeal should run from, at least, the Third Sentencing Order (dated September 21), this Court must find that Martin's appeal is untimely, and dismiss it for lack of jurisdiction.

_____

[40] Del. Supr. Ct. R. 6(a)(iii). *See also Carr v. State*, 554 A.2d 778, 779 (Del. 1989) ("Time is a jurisdictional requirement. Accordingly, this Court has held that when an appeal is not filed within the statutory time period the Court is without jurisdiction to hear the appeal.") (citing *Scott v. Draper*, 371 A.2d 1073, 1074 (Del. 1977)).

15

The State, relying on *Belfield v. State*,[41] argues that "[a] subsequent, impertinent order cannot restart or toll the jurisdictional clock for an appeal from a prior order."[42] In other words, the State argues that the time to file an appeal here ran from the Second Sentencing Order because that order is the one containing the allegedly unconstitutional scheme that is the basis of Martin's appeal. In *Belfield*, we dismissed a defendant's August 12, 2021 appeal of a July 16, 2021 Superior Court order denying his motion for an evidentiary hearing.[43] Surmising that the defendant may have filed the appeal "in an effort to re-litigate his motion for postconviction relief," we held that "it was filed well outside of the time for a motion for reargument and did not toll the time for filing a timely notice of appeal from the Superior Court's March 9, 2021 order [denying postconviction relief]."[44] We then affirmed the rule that "[u]nless an appellant can demonstrate that the failure to file a timely notice of appeal is attributable to court-related personnel—a claim that Belfield does not make—an untimely appeal cannot be considered."[45]

In *Belfield*, the defendant filed what could only be construed as either an impermissible criminal interlocutory appeal or an appeal of an entirely different order handed down more than five months prior. Here, Martin's appeal directly relates to the Second Sentencing Order. Although his appeal was filed more than thirty days after the

---

[41] 272 A.3d 1162, 2022 WL 468523 (Del. Feb. 15, 2022) (TABLE).

[42] Answering Br. at 9.

[43] *Belfield*, 2022 WL 468523, at *1.

[44] *Id.*

[45] *Id.*

entering of the Second Order, we nevertheless conclude that under the unique facts of this case, that his appeal was timely.

In a direct appeal of a criminal conviction, the appealing party must file a notice of appeal "[w]ithin 30 days after a sentence is imposed[.]"[46]  In this case, Martin's First Sentencing Order was imposed on August 12, 2022.  To appeal his conviction and initial sentence, Martin was required to file a notice of appeal on or before September 11, 2022.  But before that deadline arrived, the Superior Court modified Martin's August 12, 2022 sentence, redistributing the original aggregate five-year Level V sentence in a way that gave rise to the issue now before us on appeal.  That "corrected" Second Sentencing Order was filed on September 8, 2022.  To appeal that sentence, Martin was required to file a notice of appeal on or before October 10, 2022.[47]  He missed the October 10 deadline and filed his Notice of Appeal on October 18, 2022.  But before the October 10 filing deadline — on September 21 — the Superior Court yet again filed a "corrected" Third Sentencing Order.  This time, the court did not change the portion of the challenged Second Sentencing Order redistributing the original five-year sentence but merely removed language relating to the probation portion of Martin's sentence.

According to the State, the September 21, 2022 "corrected" Third Sentencing Order did not create a new thirty-day window for noticing an appeal of the Second Sentencing Order because the portion of the Second Sentencing Order which forms the basis of

---

[46] Del. Supr. Ct. R. 6(a)(iii).

[47] The end of the 30-day appeal period technically fell on Saturday, October 8, 2022.  Thus, Martin had until the following Monday to file his Notice of Appeal.  *See* Del. Supr. Ct. R. 11(a).

Martin's appeal — that is, the redistribution of the original five-year sentence — was left intact. According to the State, Martin was still required to file his notice of appeal of the Second Sentencing Order by October 10, 2022 despite the intervening modified Third Sentencing Order. The State points to the mischief that would be created if we were hold otherwise, especially given that the Superior Court frequently modifies sentence orders — sometimes months or years after appeal deadlines have passed — to correct technical defects. To allow such modifications to revive the appealability of months- or years-old convictions would be a grave and disruptive mistake, according to the State.

We agree with the State that a belated sentence-order modification should not resurrect a previously defaulted (or decided) appeal. But that is not what happened here. Instead, the Superior Court chose to modify Martin's Second Sentencing Order before he was required to file his notice of his appeal of that challenged order. In fairness, a litigant who is presented with a revised judgment (here, the Third Sentencing Order) before the operative appeal period for the challenged judgment (here, the Second Sentencing Order) has expired should be allowed the full thirty-day period from the revised judgment to consider whether he will appeal the challenged judgment as revised. Thus, in this unique circumstance, we regard the revised judgment as the operative judgment for the calculation of the thirty days. If, on the other hand, the revised judgment is entered after the period for appealing the challenged judgment has expired (or an appeal, having been timely filed has been resolved), then only the portion of the judgment that was revised will be subject to appeal.

Accordingly, Martin's appeal is of the challenged Second Sentencing Order and is timely.

### B. Martin Did Not Waive the Double Jeopardy Claim

In his briefing before this Court, Martin argued that he did not waive a Double Jeopardy claim by proposing the corrected sentencing scheme himself, through Trial Counsel, to the trial judge in an August 29, 2022 email. The State advised this Court at oral argument that it is not contending that Martin waived his right to challenge an illegal sentence. Thus, the waiver issue that Martin anticipatorily raised in his opening brief is not contested and thus, is not before us. This is not to say that Trial Counsel's email is irrelevant to this appeal because, as we explain, Trial Counsel's email is best viewed as evidence that Martin did not have a legitimate expectation of finality in his sentence when the trial judge altered it in its Second Sentencing Order.

### C. Whether The Superior Court's Second Sentencing Order Violates Double Jeopardy

#### 1. Successive Sentencing for the Same Crime is Barred Where a Defendant Has a Legitimate Expectation of Finality in the Original Sentence

"The protection against double jeopardy is fundamental to our criminal justice system. It is found in the Fifth Amendment to the United States Constitution, in . . . the Delaware Constitution, and in the Delaware criminal statutes."[48] The Double Jeopardy Clause in the Fifth Amendment to the United States Constitution, applies to the states

---

[48] *Blake v. State*, 65 A.3d 557, 561 (Del. 2013) (quoting *State v. Willis*, 673 A.2d 1233, 1235 (Del. Super. 1995)).

through the Fourteenth Amendment,[49] and provides that "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]"[50] The Double Jeopardy Clause provides three related protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."[51]

Martin's appeal implicates the third protection – the protection against multiple punishments for the same offense. This protection means that "[w]hen a defendant has been once convicted *and punished* for a particular crime, principles of fairness and finality require that he not be subjected to the possibility of further punishment by being again tried *or sentenced* for the same offense."[52]

In interpreting when a defendant has been "punished," or when "fairness and finality" dictate that double jeopardy should apply, Martin proposes a bright-line rule. He contends that "double jeopardy principles bar resentencing on any conviction for which the defendant has already fully served his sentence."[53] But this Court and the United States

---

[49] *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

[50] U.S. Const. amend. V. Article I, Section 8 of the Delaware Constitution provides "no person shall be for the same offense twice put in jeopardy of life or limb[.]" Martin has not asserted a claim under the Delaware Constitution.

[51] *Blake*, 65 A.3d at 561 (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

[52] *Id.* (emphasis added).

[53] Opening Br. at 2. Martin does not cite any Delaware cases for this proposition, instead he cites several Massachusetts cases and one Florida district court case. *See Commonwealth v. Sallop*, 36 N.E.3d 529, 532 (Mass. 2015) (observing that "double jeopardy principles bar resentencing on any conviction for which the defendant has already fully served his sentence"). *Commonwealth v. Parrillo*, 14 N.E.3d 919 (Mass. 2014) (remanding with instructions not to resentence on

Supreme Court have held that a different rule applies. Following the Supreme Court's decision in *United States v. DiFrancesco*, this Court in *White v. State* observed "that double jeopardy is not implicated when a defendant has no legitimate expectation of finality in his original sentence."[54]

In *White*, the defendant, White, was convicted of first-degree robbery, possession of a deadly weapon during the commission of a felony, and second-degree conspiracy. He was sentenced to fifteen years on the robbery charge, and to five years each on the weapons and conspiracy offenses. The first eight years of his sentence (three for the robbery and five for the weapons offense) were mandatory. On appeal, he was successful in having his weapons conviction and sentence vacated. Thereafter, the trial judge resentenced him to increase the sentence on the robbery conviction to twenty years and left the conspiracy sentence unchanged. Thus, after resentencing, White's total term of imprisonment remained at 25 years, although the length of his mandatory incarceration was reduced from eight to three years. In denying White's claim, we found that double jeopardy did not apply because he did not have a legitimate expectation of finality. We explained that:

> After a related sentence has been vacated on appeal, a trial judge may resentence a defendant up to the combined duration of the original sentences without violating the constitutional prohibition against double jeopardy. Under these circumstances, when the defendant challenged his robbery and

convictions as to which defendant's sentence had been fully served); *Commonwealth v. Cole*, 10 N.E.3d 1081, 1095 (Mass. 2014) (where defendant already served the original sentence, resentencing would violate principles of double jeopardy); *Sneed v. State*, 749 So.2d 545, 546 (Fla. Dist. Ct. App. 2000) ("[W]here a sentence has already been served, even if it is an illegal sentence, the court lacks jurisdiction and would violate the Double Jeopardy Clause by resentencing the defendant to an increased sentence.").

[54] *White*, 576 A.2d at 1322–23 (citing *Pennsylvania v. Goldhammer*, 474 U.S. 28, 30 (1985 per curiam) and *United States v. DiFrancesco*, 449 U.S. 117, 136–37 (1980)).

weapons convictions on double jeopardy grounds, *he had no legitimate expectation of finality in his original sentence. The counts were completely interdependent, as White's own appeal on double jeopardy grounds makes clear.*[55]

Moreover, *White* made clear that a defendant did not necessarily have a legitimate expectation of finality even when he had already started serving the sentence.[56]  But our Court did not address in *White* whether a defendant, having *fully* served a sentence, would have a legitimate expectation of finality in that sentence such that double jeopardy precludes resentencing.  Nor was that issue addressed by the United States Supreme Court in *DiFrancesco*.[57]

However, several federal courts have confronted this issue and have found that a defendant does not always have a legitimate expectation of finality after having completed a sentence.[58]  In *United States v. Brown*, the defendant, Brown, challenged his resentencing

---

[55] *Id.* at 1328 (emphasis added).

[56] *Id.* at 1326–27 ("Indeed, in cases such as this, where a defendant has successfully appealed convictions on the ground that they were lesser included offenses of other valid convictions, courts now generally hold that 'the Double Jeopardy Clause does not preclude increasing the sentence on the remaining offense to effectuate the sentencing judge's original intent, even though the defendant has already begun serving the sentence.'" (citing *United States v. Bello*, 767 F.2d 1065, 1070 (4th Cir. 1985)).

[57] In *DiFrancesco*, the United States Supreme Court considered whether The Organized Crime Control Act of 1970, 18 U.S.C. § 3576, which grants the United States the right, under specific conditions, to appeal the sentence imposed upon a "dangerous special offender" contravened the Double Jeopardy Clause.  The defendant there had begun to serve, but had not yet fully served, his original sentence when the government, pursuant to the statute, successfully increased the original sentence on appeal.  *DiFrancesco*, 449 U.S. at 136 (observing that "[t]he defendant, of course, is charged with knowledge of the statute and its appeal provisions, and has no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired.").

[58] *Brown*, 26 F.4th at 61 ("[W]hen we look to our sister circuits around the country, they are nearly uniform in their conclusion that a defendant has no legitimate expectation of finality for double-jeopardy purposes even where she served the entirety of a constituent sentence in a sentencing package.") (collecting cases).

on double jeopardy grounds where he had served his sentence for all convictions other than the one that was later vacated. After the remaining conviction was vacated, the trial judge resentenced Brown on the remaining convictions (that he had already served), such that Brown remained in prison, albeit with a lesser aggregate sentence.[59]

In denying Brown's claim that the new sentence violated double jeopardy, the United States Court of Appeals for the First Circuit highlighted that "as the Supreme Court has noted, '[a] criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent.'"[60] In other words, when a sentencing judge imposes sentences in a multicount indictment, it does so with the aggregate sentence in mind, *i.e.,* a judge might impose a lighter sentence on one count because she knows that she is imposing a heavier sentence on a related count.[61] Accordingly, the *Brown* court explained:

> [W]here the defendant challenges one of several interdependent sentences (or underlying convictions) he has, in effect, challenged the entire sentencing plan. Thus, we said, a defendant 'can have no legitimate expectation of finality in any discrete portion of the sentencing package after a partially successful appeal,' and thus no double jeopardy claim.[62]

This is true even where a defendant has served the *entirety* of a discrete portion of the sentencing package. "That is so because, in general, defendants do not 'receive [ ] separate

---

[59] *Id.* at 58.

[60] *Id.* at 59 (citing *Pepper v. United States*, 562 U.S. 476, 507 (2011)).

[61] *Id.*

[62] *Id.* at 60 (quoting *United States v. Pimienta-Redondo*, 874 F.2d 9, 16 (1st Cir. 1989) (*en banc*)).

and distinct sentences' for related convictions – they 'receive[] one aggregate sentence for th[e] interdependent offenses.'"[63]

New York's highest court also had the opportunity to answer this question in *People v. Williams*, with the added caveats that the defendants there had served their *entire* sentence (not only an entire discrete sentence within a package), and, of relevance to Martin's appeal, that the resentencing was undertaken to correct a previously illegal sentence.[64] There, defendants challenged the imposition of post-release supervision (PRS) as a violation of the Double Jeopardy Clause because the resentencing proceedings to impose PRS occurred after the defendants were released from prison, *i.e.*, after their completion of the prison terms dictated by their original sentence packages.[65] The defendants argued that "once they were freed from confinement, they were entitled to a 'legitimate expectation of finality' in the sentences that had been originally issued by the sentencing courts."[66]

Applying *DiFrancesco*, the New York Court of Appeals recognized that criminal defendants are charged with knowledge of the relevant laws that apply to them and that "they are presumed to be aware that a determinate prison sentence without a term of PRS is illegal and, thus, may be corrected by the sentencing court at some point in the

---

[63] *Id.* at 61 (citing *United States v. Benbrook*, 119 F.3d 338, 340–41 (5th Cir. 1997)).

[64] 925 N.E.2d 878 (N.Y. 2010).

[65] *Williams*, 925 N.E.2d at 887.

[66] *Id.*

future[.]"[67]  In *Williams*, the defendants' original sentences were illegal – the sentences violated a state statute that required imposition of PRS – and the defendants claimed that the correction of the illegality, imposing PRS, violated double jeopardy because they had fully completed their sentences of incarceration.  New York, like Delaware, recognizes that a court may correct an illegal sentence at any time,[68] raising the question of whether a criminal defendant can ever have a legitimate expectation of finality when they have received an illegal sentence that may be corrected at any time.[69]  Concluding that there "must be a temporal limitation on a court's ability to resentence a defendant since criminal courts do not have perpetual jurisdiction over all persons who were once sentenced for criminal acts[,]" the *Williams* court concluded that "[*e*]*ven where a defendant's sentence is illegal*, there is a legitimate expectation of finality once the initial sentence has been served *and the direct appeal has been completed (or the time to appeal has expired).*"[70] The court held, therefore, that the Double Jeopardy Clause prohibited the resentencing of the defendant to the mandatory term of PRS.

---

[67] *Id.* at 889 (citing *United States v. DiFrancesco*, 449 U.S. at 136) ("defendant, of course, is charged with knowledge of the statute and its appeal provisions, and has no expectation of finality in his sentence until the [government's] appeal is concluded or the time [for the government to] appeal has expired.").

[68] Del. Super. Ct. Crim. R. 35(a).

[69] *See Williams*, 925 N.E.2d at 896 (Pigott, J., dissenting) ("A defendant who *knows* that the sentence he was given is illegal and is subject to correction cannot claim to have a legitimate expectation that the sentence will remain uncorrected.") (emphasis in original).

[70] *Id*. at 890 (emphasis added).  The *Williams* court was not confronting the same issue discussed above in *Brown*, where defendants had only served a discrete portion of their entire sentencing package.  Instead, the defendants had served their entire sentencing package, minus the PRS added upon resentencing.

The decisions by the federal courts mentioned above and the New York court in *Williams* are helpful in determining whether a defendant has a legitimate expectation of finality in the challenged sentence. Factors we consider include whether the sentence served is part of an interdependent "package," whether the time to appeal the sentence has lapsed, and the presence of any other specific and unique facts concerning the issues raised on appeal.

### 2. *Despite Completing His Sentences for Each NCB Conviction, Martin Did Not Have a Legitimate Expectation of Finality in the Original Sentences*

With the foregoing in mind, we turn to whether Martin had a legitimate expectation of finality in his original NCB sentences such that the Second Sentencing Order violated the Double Jeopardy Clause. As discussed below, despite Martin having served both of his sentences for the NCB convictions, the Second Sentencing Order does not violate the Double Jeopardy Clause because the NCB sentences were part of an overall sentencing package, the government's time to appeal Martin's illegal sentence had not yet lapsed before it was corrected after the parties advised the court of the illegality, and because of several other facts relating to Martin's appeal.

### a. *Martin Completed Both Sentences for the NCB Convictions*

As an initial matter, we agree with Martin that he completed both sentences imposed for his NCB convictions at the time that the Superior Court modified the sentences in the Second Sentencing Order. Once the Superior Court issued the August 12, 2022 order imposing a sentence of a suspended fine, without probation or prison time, and no current fines were then owed, Martin had completed each sentence.

### b. The NCB Sentences Were Part of a Sentencing Package

The fact that Martin served discrete portions of his sentence does not mean he had a legitimate expectation of finality in his aggregate sentence. This is because Martin's three convictions and sentences were part of a larger, interdependent sentencing package. All parts of the sentence were issued as part of the same sentencing order, and each of Martin's three convictions were interdependent because they involved the same course of conduct. Each conviction involved the same victim: each NCB conviction violated a no-contact order with a single victim and the Stalking conviction arose from Martin's conduct while violating the no-contact orders.[71] Moreover, in delivering Martin's sentence, the trial judge did not distribute the aggravating factors it considered across each conviction. Instead, the trial judge announced the reasons for its sentence and then delivered the entire sentence.[72]

### c. The Time for the Government's Appeal Had Not Run

Moreover, at the time that the Superior Court issued its challenged Second Sentencing Order, the State had four more days, until September 12, to appeal the illegal First Sentencing Order imposed by the trial court.[73] The fact that the State could only appeal the sentence for Stalking, the illegal aspect of the sentence, is immaterial.

Superior Court Criminal Rule 35(d) governs the correction or modification of sentences where multiple judgments of sentence were entered on more than one offense in

---

[71] App. to Opening Br. at A3–A9 (Indictment).

[72] *Id.* at A50–A51 (Sentencing Hearing Transcript at ¶ 19–23, at 23, ¶ 1–6, at 24).

[73] *See* 10 *Del. C.* § 9902(f).

the same sentencing order, such as is the case here. It provides that a "court may consider modification of other judgments provided that the aggregate sentence of all such judgments after modification is no greater than the aggregate sentence of all such judgments entered under the original sentencing order."[74] In other words, Rule 35(d) empowers a court to do what the trial judge did in Martin's case, and what the federal courts such as the First Circuit in *Brown* recognized as an important tool of a sentencing judge in crafting sentencing packages.[75] Accordingly, Martin could not have had a legitimate expectation of finality as to the entire original sentencing package, including the NCB sentences, within the timeframe for the government to appeal because once the court corrected the sentence pursuant to any State request, it could adjust the entire sentencing package.[76]

### d. Other Facts Indicate Martin Did Not Have a Legitimate Expectation of Finality

Aside from the fact that Martin had only served a discrete portion of his aggregate sentence, and the time for the government to appeal Martin's sentence was ongoing at the

---

[74] Del. Super. Ct. Crim. R. 35(d).

[75] Accordingly, our decision in *Longford-Myers* does not bear in our decision here, except that we reiterate our *Longford-Myers* admonition. *See Longford-Myers*, 213 A.3d at 560, n.17 ("[W]e think that it is critical that the parties and sentencing judges, whether in the context of a contested sentencing or one where the State and defendant have agreed to a sentencing recommendation, take care on the front end to fashion sentences that are within the bounds of the law and that reflect a reasoned exercise of discretion within those bounds.").

[76] *White*, 576 A.2d at 1328 ("Under these circumstances, when the defendant challenged his robbery and weapons convictions on double jeopardy grounds, he had no legitimate expectation of finality in his original sentence. The counts were completely interdependent, as White's own appeal on double jeopardy grounds makes clear."). *See also Pepper*, 562 U.S. at 507 ("A criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent[]"); *United States v. Pimienta-Redondo,* 874 F.2d at 14 ("[W]hen a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan.").

time of the Second Sentencing Order, additional facts comprising Martin's appeal underscore that Martin did not have a legitimate expectation of finality in his original sentencing package. First, the fact that the government still had time to appeal highlights that Martin had only been sentenced for only 27 days when the trial judge modified his sentencing package on September 8, 2022. Martin's case is not like *Williams*, for example, where the original sentence had stood on the record *for years* before the defendant was resentenced. Martin's case is more analogous to *United States v. Bozza*, where the Supreme Court held that with respect to a court correcting an illegal sentence by adding a fine, "the fact that petitioner has been twice before the judge for sentencing and in a federal place of detention during the five hour interim cannot be said to constitute double jeopardy[.]"[77]

Second, Martin did not serve any term of incarceration or pay any fine in completing his original NCB sentences.[78]

Third, the record shows that the trial judge's intent in sentencing Martin was that Martin be subject to five years' incarceration at Level V supervision, and that Martin should have understood this. For one, the State explicitly asked for this sentence during the sentencing hearing, after reading a compelling victim impact statement, detailing the events leading up to Martin's arrest, and suggesting several aggravating factors. Although the State's request was just that — a request,[79] the judge ensured that Martin understood

---

[77] *Bozza*, 330 U.S. 160, 166 (1947).

[78] *Cf. Williams*, 925 N.E.2d at 890 ("[W]e hold that the Double Jeopardy Clause prohibits a court from resentencing the defendant to the mandatory term of PRS after the defendant has served the determinate term of imprisonment and has been released from confinement by DOCS.").

[79] *See Howell v. State*, 421 A.2d 892, 899 (Del. 1980) (observing that the defendant did not contend that, in entering his pleas, he was led to believe that the State's recommendation as to sentencing

that he could receive five years' incarceration in total. Trial Counsel's August 29, 2022 email reflects this understanding.

## IV. CONCLUSION

For the foregoing reasons, the Superior Court's Second Sentencing Order did not violate the Double Jeopardy Clause of the United States Constitution. Accordingly, we **AFFIRM** the sentence imposed by the Superior Court.

---

would be adopted by the court, and that it was "clear from the record that defendant was advised, both by counsel and by the Court – before his pleas were accepted – that the Court was not bound by the State's recommendation.").